SERBIAN EASTERN ORTHODOX CONGREGATION OF "ST. GEORGE", ELIZABETH, N. J., A CORPORATION, *ETC.*, PLAINTIFF-APPELLANT, v. SERBIAN EASTERN ORTHODOX CONGREGATION OF "ST. GEORGE", ELIZABETH, N. J. (DIOCESE FOR EASTERN STATES OF AMERICA AND CANADA) AN UNINCORPORATED ASSOCIATION, AND LOUIS VASITY *ET AL.*, DEFENDANTS-RESPONDENTS.

SERBIAN EASTERN ORTHODOX CONGREGATION OF "ST. GEORGE", ELIZABETH, NEW JERSEY, A RELIGIOUS CORPORATION OF THE STATE OF NEW JERSEY, AND RAY V. JURICH (AND 15 OTHERS), PLAINTIFFS-RESPONDENTS, v. CASLOV NIKITOVIC (AND 13 OTHERS), DEFENDANTS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued June 2, 1969—Decided June 13, 1969.

Before Judges GAULKIN, COLLESTER and LABRECQUE.

*Mr. Daniel J. Russell* argued the cause for appellants.

*Mr. Paul R. Williams* argued the cause for respondents (*Mr. Theophil D. Krehel* of the New York Bar, on the brief).

PER CURIAM. This appeal involves a controversy between two groups for control of the Serbian Eastern Orthodox Congregation of "St. George," Elizabeth, N. J.

Prior to May 10, 1963 St. George's was a constituent part of the "Serbian Eastern Orthodox Diocese in the United States and Canada." As originally constituted, that diocese (hereafter the old diocese) comprised the entire territory of the United States and Canada and was one of those making up the Serbian Orthodox Church (the mother church), with headquarters in Belgrade, Yugoslavia. The spiritual head of the mother church was the Serbian Patriarch and the power of appointment of its bishops was vested in its Holy Assembly of Bishops (the Holy Episcopal Council). Prior to May 10, above, Dragoljub Milivojevich, under the name of Bishop Dionisije, was bishop of the old diocese by appointment of the Holy Assembly.

On May 10, 1963 the Holy Assembly, with the approval of the Patriarch, divided the American and Canadian Diocese into three. St. George's was in the new Mid-Eastern American Canadian Diocese. Bishop Dionisije was assigned as bishop of the new Mid-Western Diocese. Bishop Dionisije was assigned as bishop of the new Mid-Western Diocese but was suspended from office pending the hearing and determination of certain charges which had been made against him.

Bishop Dionisije opposed the subdividing of the old diocese and sought to enlist support in resisting it. Certain members of the congregation of St. George (hereinafter the Dionisije group) responded by advising him in a letter of their desire to "help to revoke the decision of the Holy Synod" and by later participating in a Diocesan Assembly in which the old diocese, in effect, declared its independence of the mother church. Other members of the congregation (hereafter the Belgrade group) were unwilling to adopt a position in opposition to that of the mother church, and when they sought to cooperate with the bishop appointed to preside over the newly created Mid-Eastern Diocese (the new diocese), they were expelled from membership in the congregation and prohibited from attending its meetings or social functions. The bylaws of the congregation were also amended to exclude from future membership those "not recognizing the jurisdiction of the Serbian Orthodox Diocese for the United States of America and Canada having its seat in Libertyville, Illinois," (meaning the old diocese). Since that time St. George's has been in the hands of the Dionisije group while those opposed have been compelled to hold services elsewhere.

The charges against Bishop Dionisije were heard by the Holy Assembly of bishops which found him guilty and entered an order, dated March 15, 1964, removing him as bishop and reducing him to layman status. One of the charges of which he was found guilty was schism. On March 24, 1966 the bishops having jurisdiction over the three newly created American-Canadian dioceses issued a bulletin in the form of a Declaratory Hierarchical Act which, in effect, branded

his followers as schismatics who had lost their "status and all rights or privileges in the Serbian Orthodox Church."

The judge of the Chancery Division, following *Watson v. Jones,* 13 *Wall.* 679, 80 *U. S.* 679, 20 *L. Ed.* 666 (1872), determined that St. George's was an integral part of the Serbian Orthodox Patriarchate and of the new diocese established by the mother church, and that neither Bishop Dionisije nor the old diocese any longer had jurisdiction over it. He declared invalid the exclusion of the Belgrade group from membership, declared vacant all offices held by members elected by the Dionisije group, and ordered that the books and other records be turned over to those recognizing the Patriarchate and the new diocese. The present appeal by members of the Dionisije group challenges the resultant judgment.

As the law stood at the time the matter was tried, we are satisfied that *Watson v. Jones* applied and that the judgment was fully sustainable, substantially for the reasons set forth in the written opinion of the trial judge. Compare *St. John's Greek Catholic, etc. Church v. Fedak,* 96 *N. J. Super.* 556 (*App. Div.* 1967), certification denied 50 *N. J.* 406 (1967). However, the case was tried, and appellants' original brief was filed, prior to the coming down of the decision of the United States Supreme Court in *Presbyterian Church in United States v. Mary Elizabeth Blue Hull Memorial Presbyterian Church,* 393 *U. S.* 440, 89 *S. Ct.* 601, 21 *L. Ed. 2d* 658 (1969), and appellants urge in their reply brief, *inter alia,* that in determining the issues here the trial judge invaded fields of decision which were held in that case to be denied the courts by the First Amendment to the Federal Constitution. We disagree and hold that *Presbyterian Church in United States v. Mary Elizabeth Blue Hull Memorial Presbyterian Church* also calls for affirmance.

Appellants take the stand that they remain members of the Serbian Orthodox Church, although not following it in the matters here involved. That church is an autocephalous hierarchical one which functions under the spiritual guidance of its Patriarch. Its highest body is the Holy Assembly of

Bishops, upon whom rests the power to appoint and remove bishops. The Holy Assembly, which had appointed Bishop Dionisije, has removed him as bishop and solemnly declared him to be no longer an Orthodox clergyman. We are assured by appellants that they do not ask us to review that action, and we recognize that we may not do so. *Presbyterian Church in United States v. Mary Elizabeth Blue Hull Memorial Presbyterian Church, supra; Watson v. Jones, supra; Kreshik v. St. Nicholas Cathedral,* 363 *U. S.* 190, 80 *S. Ct.* 1037, 4 *L. Ed. 2d* 1140 (1960). Thus, with certain exceptions to which reference will be hereafter made, we may not look beyond the ecclesiastical determination that Dionisije is no longer a bishop having jurisdiction over the diocese of which St. George is a part, but is a schismatic, cut off from the body of the church.

■ As to the status of those, including, allegedly, appellants, who continue to follow Dionisije in spite of his removal and unfrocking, we are confronted with the Declaratory Hierarchical Act of the bishops appointed by the Holy Assembly to govern the three new Serbian Orthodox Dioceses in the United States and Canada, which declares that those who follow Bishop Dionisije are schismatics who *ipso facto* "have cut themselves off from the Mystical Body of Christ, the Holy Orthodox Church and so have *excommunicated themselves* from the family of Holy Orthodoxy throughout the world." The trial judge implicitly determined, and we find the proofs support that conclusion, that appellants here qualify as followers of Bishop Dionisije who thus became schismatics.

■ Likewise, under *Presbyterian Church in United States v. Mary Elizabeth Blue Hull Memorial Presbyterian Church* we may not on this appeal review the validity of the action of the Holy Assembly of Bishops, acting under the authority of Article 16 of the constitution of the mother church, in subdividing the old diocese, and appellants make it clear in their reply brief that they are not seeking such review. Further, assuming, as the court there pointed out, that a narrow

review of a specific ecclesiastical decision would be permissible under *Gonzalez v. Roman Catholic Archbishop,* 280 *U. S.* 1, 50 *S. Ct.* 5, 74 *L. Ed.* 131 (1929), to determine whether fraud, collusion or arbitrariness appeared, the proofs here are entirely deficient in that respect. While there was some suggestion of communist domination of the mother church as having played a part in the division of the old diocese, supporting proof was entirely lacking and the trial judge specifically found to the contrary.

Thus it would appear that the basic conclusions of the trial judge rest, not upon his determination of ecclesiastical questions whose determination by the courts may be inhibited by *Presbyterian Church in United States v. Mary Elizabeth Blue Hull Memorial Presbyterian Church* or *Watson v. Jones, supra,* but upon the recognition of decisions made by the highest authority of the mother church of which the Church of St. George was a constituent part from the time of its organization. The resultant judgment leaves intact the congregation's constitution and bylaws as they existed prior to the amendment, excluding those not recognizing the old diocese. Since the constitution of the old diocese has been carried over into the new diocese, the relations between St. George's and the new diocese, and between the latter and the mother church, remain the same.

The judgment of the Chancery Division is accordingly affirmed.