■ RUSSIAN CHURCH OF OUR LADY OF KAZAN et al., Respondents, v. ANDREW DUNKEL et al., Appellants.— In an action for a declaratory judgment, an injunction and money damages, defendants appeal from an order of the Supreme Court, Nassau County, entered March 25, 1970, which granted plain-

tiffs' motion for a preliminary injunction. Order modified, on the law and the facts, by striking out the first eight decretal paragraphs thereof and substituting therefor a provision requiring defendants to hold their services at 9 o'clock and plaintiffs at 11:30, in the forenoon, on Sundays and holy days, until this matter is resolved after a trial. As so modified, order affirmed, without costs. Two groups are vying in this action for the exclusive right to use and occupy the Church of Our Lady of Kazan in Sea Cliff, New York. Plaintiffs are supported by the Russian Orthodox Greek Catholic Church in America, or Metropolia, and defendants by the Synod of Bishops of the Russian Orthodox Church Outside of Russia, or Russian Church in Exile. The historical background of the Russian Orthodox Church has been well-documented (see *St. Nicholas Cathedral* v. *Kedroff*, 302 N. Y. 1, revd. *sub nom. Kedroff* v. *St. Nicholas Cathedral*, 344 U. S. 94; *Russian Orthodox Church* v. *Lisen*, Superior Ct., Los Angeles County, No. 536524, dec. Nov. 29, 1948). The landmark case in the area of church property disputes is *Watson* v. *Jones* (80 U. S. 679). The basic principle of the *Watson* case is that where a local church is a constituent part of a hierarchical church organization, equipped with ecclesiastical judicatories, the doctrine of separation of church and state mandates that the decrees of the highest church tribunal be binding on the civil courts. This fundamental principle of law has found constitutional emphasis in other decisions of the Supreme Court of the United States (*Kedroff* v. *St. Nicholas Cathedral, supra*; *Kreshik* v. *St. Nicholas Cathedral*, 363 U. S. 190; *Presbyterian Church* v. *Hull Church*, 393 U. S. 440). Where church members seek to effect a transfer of church property from the control of one hierarchy into the hands of a competing hierarchy, the courts will award the use and control of the property to that faction which remains loyal to the denominational or ecclesiastical hierarchy into which the parish was incorporated (*Watson* v. *Jones, supra*). In the instant dispute, plaintiffs allege that the parish of Our Lady of Kazan is a constituent part of the denomination of the Russian Orthodox Greek Catholic Church of America and has been since its organization in 1942. They further allege that defendants have sought to effect the transfer of church property from the control of one hierarchy, the Metropolia, to another hierarchy, The Synod of Bishops of the Russian Church in Exile. In defendant's answer it is alleged that the Metropolia in 1936 at a Council of Bishops in Pittsburgh acknowledged their administrative and ecclesiastical subservience to the Synod of Bishops of the Russian Church in Exile, by adopting the Provisional Statute of 1935. Such document provided that the temporary but supreme ecclesiastical authority of the Russian Orthodox Church was the aforementioned Synod of Bishops. This latter group derived its ecclesiastical legitimacy pursuant to a decree issued by the acknowledged head of the Russian Orthodox Church, the Patriarch Tikhon, in 1920, which decree temporarily gave authority to churches outside Russia to govern themselves until the political climate in Russia permitted the central church authority in Russia to function once again. In 1942, the parish of Our Lady of Kazan was incorporated. Though the charter of incorporation refers to the church as being affiliated with the Russian Orthodox Greek Catholic Church, the answering affidavits of defendants allege that the temporary but supreme ecclesiastical body of such church was the Synod of Bishops of the Russian Church in Exile so conceded by the Metropolia via their adoption of the Provisional Statute of 1935 and that the Metropolia was only a subordinate administrative organ of such body. They further allege that it was only in 1946 at a Sobor (convention) in Cleveland that the Metropolia adopted a resolution by which

it terminated all administrative and ecclesiastical subordination to the Synod of Bishops and declared that henceforth it would be autonomous. In our opinion, the affidavits of the opposing parties present conflicting views concerning the key question as to which of the two hierarchies, the Metropolia or the Synod of Bishops of the Russian Church in Exile, was the supreme ecclesiastical body by which this parish was to be governed when it was incorporated. Such issue may not be resolved without a trial at which each side will be able to present evidence. In our opinion, it was an improvident exercise of discretion to have granted an injunction on the basis of conflicting affidavits. It is well settled that temporary injunctions which in effect give the same relief which is expected to be obtained by final judgment, if granted at all, are granted with great caution and only when required by urgent situations or grave necessity, and then only on the clearest evidence. It is the policy of this court not to grant such relief where the plaintiff's ultimate right involved is in doubt, as in the instant case (*Town of Southeast* v. *Gonnella*, 26 A D 2d 550). Rabin, Acting P. J., Hopkins, Martuscello, Latham and Brennan, JJ., concur.