JUNEAL PRATT, APPELLANT, V.
HAROLD CLARKE ET AL., APPELLEES.

604 N.W.2d 822

Filed December 23, 1999.   No. S-97-1267.

Juneal D. Pratt, pro se.

Don Stenberg, Attorney General, and Terri M. Weeks for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

Juneal Pratt, an inmate at the Lincoln Correctional Center (LCC), has appealed from an order of the district court which sustained the demurrer of Harold Clarke, Michael Durst, and Mark Horton (defendants). The Nebraska Court of Appeals concluded that Pratt's petition requesting that the defendants perform certain affirmative acts was barred by sovereign immunity but that Pratt should be given the opportunity to amend his petition to allege that he had complied with the State Tort Claims Act. See *Pratt v. Clarke*, 8 Neb. App. 199, 590 N.W.2d 426 (1999). We granted Pratt's petition for further review.

## SCOPE OF REVIEW

It is not only within the power, but it is the duty of an appellate court to determine whether it has jurisdiction over the

matter before it. *Breeden v. Nebraska Methodist Hosp.*, 257 Neb. 371, 598 N.W.2d 441 (1999).

When a jurisdictional question does not involve a factual dispute, determination of a jurisdictional issue is a matter of law, which requires an appellate court to reach a conclusion independent from that of the trial court. *Ferguson v. Union Pacific RR. Co., ante* p. 78, 601 N.W.2d 907 (1999).

## FACTS

On May 28, 1997, Pratt filed a petition pursuant to 42 U.S.C. § 1983 (Supp. III 1997), alleging that the defendants were conspiring to deprive him of his 8th and 14th Amendment rights under the U.S. Constitution. At that time, Clarke was the director of the Department of Correctional Services, Durst was the State Fire Marshal, and Horton was the director of the then Department of Health.

Pratt alleged that the defendants were violating his Eighth Amendment rights by subjecting him to a dangerous, overcrowded, and illegally constructed facility in direct violation of Neb. Rev. Stat. § 83-954 (Reissue 1999) and the Enabling Act of Congress. Pratt claimed that LCC was constructed in violation of the standards set forth in § 83-954 and that (1) he was subjected to dangerous overcrowding and "double celling"; (2) there was no way other than beating and kicking on the doors to alert staff to danger; (3) there were no smoke detectors, sprinklers, or smoke exhaust systems; (4) a faulty ventilation system failed to work without blowing dust throughout the building; and (5) the defendants exhibited overall indifference to his health and safety.

Pratt sought injunctive relief directing the defendants to (1) reduce the number of inmates to design capacity, (2) correct the ventilation system, (3) install fire and cell alarm systems, (4) install working smoke detectors in cells, (5) reestablish single celling, and (6) increase staff. In the absence of such relief, he requested that the defendants be ordered to show cause as to why the facility should be allowed to function in conflict with § 83-954 and the Enabling Act of Congress. In the absence of such cause supported by clear authority, he requested that the district court order the immediate closing of LCC. In addition,

Pratt sought an order directing that each defendant pay him $50,000 for the damage he suffered as a result of the faulty ventilation system and the mental stress caused by the defendants' deliberate indifference to his rights.

The defendants demurred to the petition, alleging that it failed to state a claim for which relief could be granted, that the district court did not have subject matter jurisdiction, and that Pratt had no legal capacity to sue. The district court sustained the defendants' demurrer and dismissed Pratt's petition. Pratt appealed.

The Court of Appeals affirmed in part and in part reversed and remanded with directions. It held that the allegations of Pratt's petition which sought to compel affirmative actions on the part of the State were barred by sovereign immunity but that Pratt should be allowed to amend his petition to allege that he had complied with the State Tort Claims Act. Pratt successfully petitioned this court for further review.

## ASSIGNMENTS OF ERROR

In his petition for further review, Pratt assigns as error that the Court of Appeals erred in applying sovereign immunity provisions to his § 1983 claim and in concluding that he was required to exhaust the remedies of the State Tort Claims Act prior to bringing an action under § 1983.

## ANALYSIS

It is not only within the power, but it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *Breeden v. Nebraska Methodist Hosp.*, 257 Neb. 371, 598 N.W.2d 441 (1999). When a jurisdictional question does not involve a factual dispute, determination of a jurisdictional issue is a matter of law, which requires an appellate court to reach a conclusion independent from that of the trial court. *Ferguson v. Union Pacific RR. Co., ante* p. 78, 601 N.W.2d 907 (1999).

We conclude that Pratt failed to exhaust his administrative remedies prior to filing an action pursuant to § 1983 and that therefore the district court lacked jurisdiction to consider Pratt's petition. As the district court was without jurisdiction, the Court

of Appeals and this court also lack jurisdiction to consider the merits of Pratt's action.

■ On April 26, 1996, the Prison Litigation Reform Act (PLRA) was signed into law. Prior to the adoption of the PLRA, 42 U.S.C. § 1997e(a) (1994) granted district courts discretion to require a prisoner to exhaust administrative remedies, and a district court's dismissal for failure to exhaust was reviewed only for an abuse of discretion. See *Irwin v. Hawk*, 40 F.3d 347 (11th Cir. 1994). The PLRA now requires, inter alia, that prisoners exhaust administrative remedies prior to filing actions under § 1983 or any federal law. Specifically, 42 U.S.C. § 1997e(a) (Supp. III 1997) states: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." As stated in *Alexander v. Hawk*, 159 F.3d 1321, 1324 (11th Cir. 1998), "Congress enacted this mandatory exhaustion requirement in section 1997e(a) as part of the PLRA's effort to curtail frivolous and abusive prisoner litigation."

■ Pratt has administrative remedies available to him in Nebraska. Pursuant to Neb. Rev. Stat. §§ 83-4,111 and 83-4,135 through 83-4,139 (Reissue 1999) and § 1997e, the Department of Correctional Services has adopted and promulgated rules and regulations to establish criteria for determining the rights and privileges of an inmate, including grievance procedures. Copies of all rules and regulations are to be filed pursuant to the Administrative Procedure Act and distributed to all adult correctional facilities in the state. Inmates are to be informed of the rules and policies concerning complaint procedures. See Neb. Rev. Stat. § 83-4,112 (Reissue 1999). The provisions of Neb. Rev. Stat. §§ 83-4,109 to 83-4,123 (Reissue 1999) prescribe the current procedures under which the hearings before the prison boards shall be conducted. *Reed v. Parratt*, 207 Neb. 796, 301 N.W.2d 343 (1981).

The grievance procedures described herein are set forth in 68 Neb. Admin. Code, ch. 2. When Pratt's petition was filed, 68 Neb. Admin. Code, ch. 2, § 003.02 (1994), provided: "Inmates shall submit the inmate concern to the unit staff mem-

ber who can most adequately respond on an Informal Grievance Resolution Form. If dissatisfied with the informal response the inmate may file a grievance for formal resolution." We note that other remedies are not precluded. In particular, 68 Neb. Admin. Code, ch. 2, § 005.01 (1994), stated: "Claims against the Department involving miscellaneous or tort claims for money damages may be filed pursuant to the State Tort Claims Act." Thus, prisoners in Nebraska must adhere to and exhaust these specific provisions before bringing a § 1983 claim.

There are circumstances, however, in which courts have recognized that prisoners are not required to exhaust administrative remedies under the PLRA before bringing a § 1983 claim. In doing so, courts generally look to the type of remedy sought by the prisoner.

When injunctive relief is sought, prisoners are required to exhaust administrative remedies if any are in place. For example, in *Alexander v. Hawk, supra,* an inmate brought an action against prison officials, claiming that enforcement of federal legislation restricting prisoners' access to magazines that are sexually explicit or feature female nudity violated his First Amendment rights. The court held that the prisoner was required to submit his claim for monetary and injunctive relief to the prison grievance program and therefore dismissed the claim. Similarly, in *Hanson v. Chesney,* 37 F. Supp. 2d 399 (E.D. Pa. 1999), an inmate brought a § 1983 action against prison officials, alleging that his Eighth Amendment rights were violated because the defendants failed to protect him from attack by a fellow prisoner. The court held that the inmate was required to exhaust his administrative remedies before bringing an action seeking damages and injunctive relief. See, also, *Russo v. Palmer,* 990 F. Supp. 1047 (N.D. Ill. 1998).

There appears to be a split of authority when the prisoner is seeking monetary damages. Some courts have ruled that a prisoner seeking only monetary damages does not need to exhaust administrative remedies if the grievance procedure does not allow for that type of recovery. For instance, in *Hollimon v. DeTella,* 6 F. Supp. 2d 968 (N.D. Ill. 1998), a former inmate brought a civil rights action against prison officials who allegedly subjected him to a strip search for the sole purpose of

humiliation. The defendants moved to dismiss the action on the ground that the plaintiff had failed to exhaust his administrative remedies as required by § 1997e(a). After deciding to consider only the plaintiff's claim for monetary damages, the court held that the exhaustion requirement was inapplicable because the grievance procedure that was available to the plaintiff did not allow for recovery of monetary damages. In *Garrett v. Hawk*, 127 F.3d 1263 (10th Cir. 1997), an inmate sought monetary damages for alleged constitutional violations by prison officials. The court held that he was not required to exhaust administrative remedies pursuant to § 1997e(a), since there were no administrative remedies available for such claims. See, also, *Whitley v. Hunt*, 158 F.3d 882 (5th Cir. 1998); *Davis v. Woehrer*, 32 F. Supp. 2d 1078 (E.D. Wis. 1999).

In contrast, other courts dealing with prisoners seeking monetary damages have focused on whether there is an administrative remedy program available within the prison, not whether the type of remedy is available through the procedure. See, *Alexander v. Hawk*, 159 F.3d 1321 (11th Cir. 1998); *Moore v. Smith*, 18 F. Supp. 2d 1360 (N.D. Ga. 1998) (state prisoner required to exhaust administrative remedies with respect to claim for monetary damages); *Funches v. Reish*, No. 97 Civ. 7611, 1998 WL 695904 (S.D.N.Y. Oct. 5, 1998) (federal prisoner required to exhaust administrative remedies regardless of type of relief sought).

In the case at bar, Pratt seeks injunctive relief and $50,000 from each of the defendants for personal damages caused by the alleged faulty ventilation system and the mental stress caused by the defendants' alleged deliberate indifference. Our review of Pratt's claim does not indicate that he asserts a claim for physical damages, but, rather, for the risk of physical damages and mental stress. Section 1997e(e) does not permit recovery for custodial mental or emotional damages without a prior showing of physical injury. See *Zehner v. Trigg*, 133 F.3d 459 (7th Cir. 1997).

■ We conclude that where a prisoner has requested both monetary damages and injunctive relief with respect to prison conditions under § 1983, the PLRA requires that the prisoner must exhaust his or her administrative remedies before bringing

such action. Allowing a prisoner to evade the requirement of § 1997e(a) by inserting a claim for monetary damages would defeat the purpose of the PLRA. See *Hanson v. Chesney*, 37 F. Supp. 2d 399 (E.D. Pa. 1999). Pratt seeks both monetary damages and injunctive relief, and he must therefore adhere to the requirements of § 1997e(a) by exhausting all available administrative remedies before bringing a § 1983 action. Pratt failed to comply with the PLRA, and therefore, the district court lacked jurisdiction to hear his § 1983 claim. Accordingly, the district court properly sustained the defendants' demurrer.

We next address whether the Court of Appeals properly remanded the cause with directions that Pratt be allowed to amend his petition to allege that he had complied with the State Tort Claims Act. The Court of Appeals relied on *Kane v. Vodicka*, 238 Neb. 436, 471 N.W.2d 136 (1991). In *Kane*, we concluded that the district court had subject matter jurisdiction over an action brought by a prisoner seeking monetary damages for alleged unsanitary conditions in the prison kitchen. In doing so, we stated that "Neb. Rev. Stat. § 81-8,214 . . . specifically vests in the district court jurisdiction to hear tort claims filed against the state." *Kane*, 238 Neb. at 438, 471 N.W.2d at 138. We cited to several cases decided under such power, including *Daniels v. Andersen*, 195 Neb. 95, 237 N.W.2d 397 (1975), and *Webber v. Andersen*, 187 Neb. 9, 187 N.W.2d 290 (1971), *appeal after remand, Webber v. City of Omaha*, 190 Neb. 678, 211 N.W.2d 911 (1973).

The PLRA was adopted subsequent to our decision in *Kane* and therefore controls as to cases relating to prison conditions brought under § 1983 or any other federal law. However, 68 Neb. Admin. Code, ch. 2, § 005 (1994), provides that a state tort claim is not precluded by requiring a prisoner to exhaust administrative remedies adopted by the Department of Correctional Services. The question presented is whether Pratt's claim for monetary damages is part of his § 1983 claim or a separate cause of action brought as a state tort claim.

Nothing in Pratt's claim leads us to conclude that he has brought a state tort claim. To allow Pratt to now allege a tort claim would in effect permit him to amend his petition to set forth a completely separate and different cause of action. Thus,

the Court of Appeals erred in remanding the cause in order to allow Pratt to amend his petition to set forth a separate and different cause of action.

## CONCLUSION

For the reasons set forth herein, we affirm that portion of the judgment of the Court of Appeals which affirmed the district court's dismissal of Pratt's petition, and we reverse that portion of the judgment of the Court of Appeals which remanded the cause with directions that Pratt be allowed to amend his petition.

AFFIRMED IN PART, AND IN PART REVERSED.